

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIE ADAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 06 C 0642 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| CHICAGO BOARD OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Julie Adams sues her former employer, the Chicago Board of Education ("the Board"), alleging the Board violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 by terminating her subject to a reduction in force (Count I) and failing to promote her (Count II) based on her race and color. The Board moves for summary judgment. Adams has not filed any materials in opposition to the motion. For the reasons set forth below, the Board's summary judgment motion is granted.

## BACKGROUND

I. **Local Rule 56.1**

The Board filed a statement of material facts pursuant to Local Rule 56.1(a)(3). Rule 56.1 Statement of Material Facts, Dkt. No. 34 (September 14, 2006). Although Adams was properly warned of the consequences, she failed to respond. LR 56.2; Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment, Dkt. No. 29 (September 14, 2006). As a result, the court deems admitted all material facts set forth in the Board's Rule 56.1(a)(3) statement. Local Rule 56.1(b)(3)(C). However, Adams' failure to comply with Rule 56.1 does not result in an automatic

grant of summary judgement, and the court must still evaluate the facts in the light most favorable to her. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003).

## II. Facts

The following facts are undisputed unless otherwise noted. Julie Adams, an African-American woman with fifteen years of customer service experience, was hired by the Board as a telecommunications project manager on November 19, 2001. Def. Facts at ¶¶ 1, 9, 29. The telecommunications unit provides maintenance, service and support for Chicago Public Schools' telecommunications equipment and infrastructure. *Id.* at ¶ 5. Kathryn Zalewski, a Caucasian, became director of the telecommunications unit in January of 2003. *Id.* at ¶¶ 4, 10. Zalewski made a number of organizational changes. *Id.* at ¶ 6. She divided the telecommunications unit into five sections: customer service, operations, database systems, business administration and infrastructure. *Id.* Each section had a manager who reported directly to Zalewski. *Id.* Of the thirty-one employees in the telecommunications unit, twelve were African-American, twelve Caucasian, five Hispanic and two Asian. *Id.* at ¶ 32.

On March 15, 2004, Zalewski revised Adams' job title to senior order management analyst/project manager to better reflect her duties, but her salary remained the same. Def. Facts at ¶ 7. Adams reported to Christine McNutt (African-American) in the customer service section, and McNutt reported to Zalewski. *Id.* at ¶¶ 6-7. There were five other order management analysts reporting to McNutt in the customer service section. *Id.* at ¶ 31. Of these, four were African-American and one Hispanic. *Id.* The order management analysts performed many of the same job duties as Adams. *Id.*

The Board issued a district-wide mandate to cut expenses for the 2005-2006 school year. Def. Facts at ¶ 12. Zalewski reviewed the unit's budget and decided that Adams' position was expendable. *Id.* at ¶ 13. She concluded that the customer service section could best adapt to the loss of a position. *Id.* at ¶ 14. Zalewski weighed two options: (1) closing two order management analyst positions; or (2) closing Adams' position. *Id.* at ¶ 15. At the time, Adams' salary was double that of any of the five other order management analysts, and more than her supervisor McNutt's salary. *Id.* at ¶¶ 16-18. Zalewski considered the fact that closing Adams' position would distribute the work load of only one person (rather than two) among the remaining five order management analysts. *Id.* at ¶ 15. Zalewski recommended closing Adams' position, and she was terminated on June 30, 2005. *Id.* at ¶ 19.

Vic Sassolino, a Caucasian male with twenty-two years of telecommunications experience, was hired as a special projects manager at the same time as Adams. Def. Facts at ¶¶ 20-21; Compl. at ¶ 13. Both Adams' and Sassolino's positions were classified as administrative. *Id.* at ¶¶ 2, 20. In July of 2003, Zalewski proposed a revision of Sassolino's title to senior network infrastructure manager; the proposal was approved on January 31, 2004. *Id.* at ¶ 22. Sassolino's title change did not result in an increase in pay or benefits, but was intended to better reflect the duties he currently performed. *Id.* at ¶¶ 22, 25. Zalewski created an organizational chart indicating Sassolino's new title in November 2003 and again in August 2004. *Id.* at ¶ 26. The charts were distributed and available to telecommunications unit employees on the unit's shared computer drive. *Id.* However, Adams alleges she only learned of Sassolino's title change two days before her termination, on June 28, 2005. Compl. at ¶ 13. Adams claims Sassolino was promoted to a position for which she was qualified, but she did not have the opportunity to apply because the senior network infrastructure

3

manager position was not announced. *Id.* Adams filed a charge with the United States Equal Employment Opportunity Commission on July 20, 2005 alleging the Board discriminated against her by terminating her and failing to promote her based on her race and color. *Id.* at ¶¶ 7.1, 9, 12. She received a notice of right to sue on November 7, 2005. *Id.* at ¶ 8.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A movant has the initial burden of demonstrating that it is entitled to summary judgment. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Once a movant has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Cont'l Cas. Co.*, 427 F.3d at 1041. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A nonmovant's failure to respond to a summary judgment motion does not result in automatic judgment for the movant. *Raymond*, 442 F.3d at 608. The ultimate burden of persuasion remains with the movant to show it is entitled to judgment as a matter of law. *Id.*

### II. *McDonnell Douglas* Burden-Shifting Framework

In a Title VII case, an employee may either offer direct evidence of the employer's discrimination, or she may proceed under the indirect burden-shifting framework set forth in

4

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Adams does not present direct evidence of discrimination. Therefore, the court applies the *McDonnell Douglas* burden-shifting framework. The Board must show that Adams cannot establish a *prima facie* case of discrimination. *Id.* at 802. If she establishes a *prima facie* case, the burden shifts to the Board to articulate a legitimate, non-discriminatory reason for its actions. *Id.* If the Board meets this burden, she may rebut its evidence by showing that the Board's reason is a pretext for discrimination. *See id.* at 803-05; *see also Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 643-44 (7th Cir. 2006). To survive summary judgment, Adams must present "evidence that calls into question the veracity of the [Board's] explanation." *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 601 (7th Cir. 2001); *see also Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) ("[p]retext is more than a mistake on the part of the employer; it is a phony excuse"). The fact that Adams proceeds *pro se* does not relieve her of the burden to establish a *prima facie* case of discrimination and to present evidence giving rise to an issue of material fact. *Carr v. United Airlines*, No. 03 C 8553, 2005 WL 1705830, at **3-5 (N.D. Ill. July 15, 2005) (Pallmeyer, J.).

### III. Termination

Adams alleges she was discriminated against based on her race and color when she was terminated. The Board contends it terminated her pursuant to a valid reduction in force unrelated to her race or color. To prevail on summary judgment, the Board must demonstrate that Adams cannot establish a *prima facie* case of discrimination, or that she failed to submit sufficient evidence to raise an inference that the Board's proffered reason for her termination was a pretext for discrimination. The Board has the initial burden of demonstrating that Adams cannot establish a *prima facie* case of race and color discrimination. The *prima facie* case requires a showing that

5

Adams (1) belongs to a protected class; (2) her performance met the Board's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees not in her protected class received more favorable treatment. *Keri*, 458 F.3d at 643.

The Board argues Adams was dismissed subject to a reduction in force. Def. Facts at ¶ 12. A reduction in force in which employees remaining at the company absorb the duties of their former co-worker is known as a "mini-RIF." *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876 (7th Cir. 2002) (citing *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir. 2000) (in a mini-RIF, a single employee is discharged and her responsibilities are assumed by other employees)). In a case involving a mini-RIF, a plaintiff must demonstrate that her duties were absorbed by employees who were not members of her protected class. *Id.*

The Board argues summary judgment must be granted on Adams' termination claim because she cannot establish the fourth element of the *prima facie* case, that similarly situated non-African-American employees were treated more favorably. To meet her burden of demonstrating that another employee is similarly situated, Adams must show that there is someone who is "directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). A court must look at all relevant factors to determine if another employee is similarly situated, including whether she reported to the same supervisor and was subject to the same standards. *Id.* In reduction in force cases, plaintiffs are also required to show that the retained employees possess comparable experience, education, and qualifications, provided these attributes were taken into account by the employer in making the employment decision at issue. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000).

6

Adams claims she is similarly situated to Vic Sassolino, a Caucasian male who began work in the telecommunications unit at the same time as Adams, and whose position was also classified as administrative. Compl. at ¶ 13, Def. Facts at ¶¶ 2, 20, 24. However, Sassolino had twenty-two years of experience as a telecommunications manager and consultant, and was hired to supervise technical projects relating to the Board's systems and infrastructure. *Id.* at ¶¶ 20-21. Adams had fifteen years of customer service experience, and was hired to perform customer service duties. *Id.* at ¶¶ 8, 29. The administrative classification designates the compensation level for their positions, but does not indicate that either employee is qualified to perform the other's job. *Id.* at ¶ 28. The two had different supervisors: Adams reported to McNutt (although Zalewski, not McNutt, ultimately recommended that her position be closed) and Sassolino reported directly to Zalewski. Def. Mot., Ex. F. At the time her position was closed, Adams earned more than Sassolino. Def. Facts at ¶ 18. Viewed in the light most favorable to Adams, the facts do not support a reasonable inference that Sassolino was similarly situated to Adams.

Notably, Adams does not allege she is similarly situated to the five other order management analysts in her section, even though they performed many of the same duties and reported to the same supervisor. Def. Facts at ¶ 31. Four of the analysts are African-American and one is Hispanic. *Id.* Zalewski intended that Adams' responsibilities would be distributed among the five remaining analysts in her section. *Id.* at ¶ 15. Therefore, at least with respect to the four African-American analysts, Adams cannot show that her duties were absorbed by employees not in her protected class when her position was closed subject to a mini-RIF. *Krchnavy*, 294 F.3d at 687. Adams fails to identify similarly situated non-African-American employees who were treated more favorably.

7

Accordingly, she cannot establish a *prima facie* case of race and color discrimination based on her termination.

Even if Adams could establish a *prima facie* case, the Board argues that Adams cannot demonstrate that its stated reason for her termination is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 803-05. Under *McDonnell Douglas*, the Board must articulate a legitimate, non-discriminatory reason for her termination. *Id.* at 802. The Board contends Adams' position was closed due to a reduction in force in response to district-wide budget cuts. Def. Facts at ¶¶ 12, 19. According to the Board, the budget cuts necessitated downsizing the unit. *Id.* Zalewski reviewed the unit's budget and recommended closing Adams' position based on the role of the customer service section, Adams' salary, and the fact that her duties could be absorbed by the five other order management analysts. *Id.* at ¶¶ 14-18.

To show pretext in a reduction in force case, Adams must establish that an improper motive "tipped the balance" in favor of her discharge. *Krchnavy*, 294 F.3d at 876 (citations omitted). It is insufficient to argue that the Board's decision was wrong or mistaken; she must present evidence that it was dishonest. *Olsen*, 267 F.3d at 601; *Hudson*, 375 F.3d at 561. Adams fails to set forth any facts showing that the Board's explanation was dishonest. The Board cites several reasons for its decision to close her position: her high salary, the fact that others in her section could assume her duties, and the relative importance of the customer service section as compared with the unit's other sections. Def. Facts at ¶¶ 14-18. All but one of the employees in Adams' section were African-American, as was her immediate supervisor. *Id.* at ¶¶ 11, 31. Viewing the facts in her favor, a reasonable jury could not infer that Adams' termination was racially motivated. Summary judgment must be granted on Count I.

## IV. Failure to Promote

Adams alleges she was discriminated against when Vic Sassolino, a Caucasian male, was promoted to a position she was qualified for, but was unable to apply for because it was not announced. Compl. at ¶ 13. The Board argues her claim is barred by the statute of limitations, and even if it is not time barred, she was not qualified for Sassolino's position. To establish a *prima facie* case of discrimination based on failure to promote, Adams must show that she was (1) a member of a protected class; (2) qualified for the position sought; (3) rejected for the position; and (4) treated less favorably than a non-African-American candidate. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

In Illinois, a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission within 300 days after the "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001). Failure to timely file a charge precludes a subsequent Title VII lawsuit. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005). The 300 days begins to run when the employer takes the action at issue and when the plaintiff knows she has been injured. *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-11 (2002)); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). In limited circumstances, a plaintiff may invoke the doctrine of equitable tolling to pursue time barred claims. *Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir. 1994). But in the context of Title VII, equitable tolling is "to be applied sparingly." *Beamon*, 411 F.3d at 860 (quoting *Nat'l R.R.*, 536 U.S. at 113). Equitable tolling allows a plaintiff to avoid the 300 day deadline if, despite the exercise of reasonable due diligence, she was unable to obtain vital information regarding the existence of her claim. *Cada*, 920 F.2d at 451-52. To determine whether

Adams lacked vital information, the court must consider whether a reasonable person in her position would have been aware that Sassolino was promoted in possible violation of Title VII. *Id.* If so, Adams cannot resort to equitable tolling to save her claim.

Adams alleges she only learned of Sassolino's purported promotion on June 28, 2005. Compl. at ¶ 13. She filed her discrimination charge on July 20, 2005, within 300 days of June 28, 2005. *Id.* at ¶ 7.1 The Board contends Sassolino's title change was not a promotion because it did not result in any change in pay or benefits, it merely reflected his current job duties. Def. Facts at ¶¶ 22, 25. Even if his title change is deemed a promotion, the Board argues Adams' claim is time barred because the alleged promotion was proposed in July of 2003 and approved on January 31, 2004, over 300 days before Adams filed her discrimination charge. *Id.* at ¶ 22; Compl. at ¶ 7.1. The Board notes that Zalewski created organizational charts for the telecommunications unit in November 2003 and August 2004 reflecting Sassolino's new title, and these charts were distributed and available to unit employees on the unit's shared computer drive. *Id.* at ¶ 26; Def. Mem. at 12.

Adams fails to offer any evidence that Sassolino's change in job title was concealed and she was thereby unaware of the situation. Because she did not file a response to the Board's Rule 56.1 statement, the court must deem admitted the fact that the organizational charts were distributed and available to unit employees. *Id.* at ¶ 26; *Raymond*, 442 F.3d at 608. It would have required minimal diligence to view organizational charts available on a shared computer drive. A reasonable jury could not conclude that Adams lacked knowledge because her employer concealed information about Sassolino's alleged promotion for one and a half years. Accordingly, equitable tolling does not apply and Adams' failure to promote claim is untimely.

Even if it were not time barred, Adams' claim cannot survive summary judgment. She cannot establish a *prima facie* discrimination case for failure to promote because she was not qualified for the position of senior network infrastructure manager. Even though Adams and Sassolino began work at the same time in administrative positions, their experience and job skills were different. Def. Facts at ¶ 28. Adams had customer service experience, worked in the customer service section and performed customer service duties. *Id.* at ¶¶ 8, 29. Sassolino had telecommunications experience, supervised a technical staff of four, and performed systems and infrastructure services. *Id.* at ¶¶ 20-21, 23. His job responsibilities as senior network infrastructure manager were technical in nature and included working with vendors and outside contractors providing technical services, conducting on-site inspections of construction projects, assisting city building inspectors with inspections, and working with the Chicago Public Schools' security staff on fire and security systems integration. *Id.* at ¶¶ 21, 23. Viewed in Adams' favor, the facts do not support a reasonable inference she was qualified for the position of senior network infrastructure manager.

Even if Adams could establish a *prima facie* case of discrimination for failure to promote, she cannot show that the Board's reason for Sassolino's alleged promotion was a pretext for discrimination. First, the Board denies the title change was a promotion. Zalewski revised Sassolino's job title to reflect his duties, without an increase in pay or benefits, just as she revised Adams' job title. Def. Facts at ¶¶ 7, 22. Second, Adams fails to submit evidence indicating the Board's assertion that she was unqualified for Sassolino's job was dishonest. Accordingly, summary judgment is appropriate.

## CONCLUSION

Adams has not met her burden of establishing a *prima facie* case of discrimination based on race or color with respect to either her termination or the Board's failure to promote her. Nor can she establish that the Board's asserted reasons for its actions are pretextual. Accordingly, the Board's unopposed summary judgment motion is granted.

ENTER:

*[signature: Suzanne B. Conlon]*

Suzanne B. Conlon
United States District Judge

October 18, 2006